Lila Faye NORRIS, Relator,

v.

Honorable Bob BULLOCK, Comptroller
et al., Respondents.

No. B–7907.

Supreme Court of Texas.

May 2, 1979.

Rehearing Denied May 30, 1979.

Riddle, Murphrey, O'Quinn & Cannon, John M. O'Quinn, Houston, for relator.

Mark White, Atty. Gen., David M. Kendall, Jr., 1st Asst. Atty. Gen., Dudley Fowler and Watson C. Arnold, Asst. Attys. Gen., Austin, for respondents.

BARROW, Justice.

Relator Lila Faye Norris seeks a mandamus against either the Honorable Bob Bullock, Texas Comptroller of Public Accounts, or the Honorable Reagan Houston, Chairman of the State Highway and Public Transportation Commission, to issue a warrant for the payment of a final judgment against the State of Texas and the Department of Public Highways and Public Transportation. The judgment in the sum of $82,597.43 is for injuries sustained by Ms. Norris because of a malfunctioning traffic light in Bay City. The relator recovered her judgment under the Texas Tort Claims Act, Article 6252–19 [1]; State v. Norris, 550 S.W.2d 386 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.). We conditionally grant the relief against Comptroller Bullock.

1. All statutory references are to Texas Revised Civil Statutes Annotated.

The parties concede the validity and finality of the judgment. The answer filed herein on behalf of Comptroller Bullock states that "he does not object to the Entry of a Writ of Mandamus ordering him to pay Relator the amount of the final judgment in question out of funds within his control." Relator's petition is supported by the affidavit of the Chief Clerk of the Comptroller of Public Accounts which avers that there are sufficient funds available to pay this judgment. By supplemental affidavit, the Chief Clerk has averred specifically that there is currently a balance of nearly 35 million dollars in the General Revenue Fund (Fund No. 001) to the credit of the State Department of Highways and Public Transportation[2]. Comptroller Bullock repeatedly advised relator's attorney before this action was filed that there were available funds to pay the judgment but that he could not do so without a voucher signed by a representative of the Highway Commission or a court order.

Articles 4344, 4355, 4356 and 4357 enumerate the duties of the Comptroller and, in effect, make him responsible as the State's sole accounting officer, to determine that the fiscal concerns of the State are managed as provided by law. Included is the duty to verify the correctness of all accounts presented for settlement and to require vouchers in support of same. These duties are different from those of the State Treasurer and make him more than a mere disbursing officer.

We held in *S. & G. Const. Co., Inc. v. Bullock*, 545 S.W.2d 953 (Tex.1977) that a final judgment takes the place of a voucher and the Comptroller was there ordered to pay the final judgment rendered against the Board of Regents of the University of Texas for recovery of consequential damages growing out of a construction contract. In reaching this result, we relied upon the broad terms of the appropriation act as authorizing the payment of a judgment for damages. The rule established in *S. & G. Const. Co., Inc. v. Bullock, supra,* is applicable here and there is a clear duty upon the Comptroller to pay the final judgment without receipt of a voucher signed by Chairman Houston.

Respondent's attorneys, although purporting to represent Comptroller Bullock as well as Chairman Houston, insist however that there are no funds available to pay this judgment. Specifically it is asserted that there are constitutional and statutory provisions which limit expenditures from the State Highway Fund (Fund No. 006)[3]. We need not reach this question in that the General Revenue Fund (Fund No. 001) has a balance to the credit of the Highway Department sufficient to pay this judgment.

The 1977 appropriations bill specifically authorizes the payment of judgments rendered against the State under the Texas Tort Claims Act, Article 6252–19 or Article 6252–26. Prior thereto, it was necessary for the successful party to secure an appropriation from the legislature, such as H.B. No. 1575[4] enacted by the 65th Legislature, to satisfy such judgment. In order to effectuate the purpose of the Texas Tort Claims Act, the 65th Legislature added section 70 to the appropriations bill to specifically authorize payment of this type judgment by providing:

"None of the funds appropriated by this Act may be expended for payment of any judgment obtained against the State of Texas or any state agency, except where it is specifically provided in an item or items of appropriation that the funds thereby appropriated may be used for the payment of such judgments. PROVIDED, HOWEVER, THAT NOT WITHSTANDING ANY OTHER PROVISIONS OF THIS ACT, FUNDS APPROPRIATED BY THIS ACT MAY BE EX-

2. This money is appropriated to the Department by H. B. 3, 1977 Tex.Gen.Laws, Ch. 55, at 112.

3. Article VIII, section 7–a of the Texas Constitution and Articles 6674 and 6674e, Texas Revised Civil Statutes Annotated.

4. 1977 Tex.Gen.Laws, ch. 644, at 1647.

PENDED FOR PAYMENT OF JUDG-MENTS ENTERED IN CAUSES OF ACTION ARISING UNDER THE TEXAS TORT CLAIMS ACT, Article 6252–19 of Vernon's Civil Statutes or Article 6252–26 of Vernon's Civil Statutes, as amended by Senate Bill No. 37, Acts of the Sixty-fifth Legislature, 1977." (Emphasis ours)

This provision fully authorizes the expenditure of such funds appropriated to the State Department of Highways and Public Transportation as are necessary to satisfy the judgment of relator.

Perhaps the 66th Legislature would enact specific legislation to pay Ms. Norris' judgment from general funds, whereby she would be paid after September 1, 1979. However, Ms. Norris and other holders of judgments against the Highway Department under the Texas Tort Claims Act are entitled to be paid under the terms of the Act [5] and not at the discretion of a subsequent legislature.

We conclude that there is a clear duty upon the Comptroller to pay the final judgment from funds appropriated to the Department which are identified as the General Revenue Fund (Fund No. 001). The Comptroller has stated that he will comply with this opinion and issue the warrant without the necessity of a voucher signed by the proper official of the Department. In the event he fails to do so, a writ of mandamus will issue. The petition for writ of mandamus is conditionally granted.

---

**5.** Sec. 11 of the Texas Tort Claims Act provides for payment of judgments under the Act as follows:

"Judgments recovered against units of government pursuant to the provisions of this Act shall be enforced in the same manner and to the same extent as judgments are now enforced against such units of government under the statutes and law of Texas; and no additional methods of collecting judgments are granted by this Act. Provided, however, if the judgment is obtained against a unit of government that has procured a contract or policy of liability or indemnity insurance protection, the holder of the judgment may use such methods of collecting said judgment as are provided by the policy or contract and statutes and laws of Texas to the extent of the limits of coverage provided therein. It is expressly provided, however, that judgments under this Act becoming final during any fiscal year need not be paid by such unit of government until the following fiscal year except to the extent that they may be payable by an insurance carrier. For the payment of any final judgment obtained under the provisions of this Act, a unit of government not fully covered by liability insurance is hereby authorized to levy an ad valorem tax, the rate of which, if found by the unit of government to be necessary, may exceed any legal limit otherwise applicable except as may be imposed by the Constitution of the State of Texas. In the event that judgments arising under the provisions of this Act become final against a unit of government in any one fiscal year in an aggregate amount, exclusive of insurance coverage, if any, in excess of one percent of the budgeted tax funds, exclusive of general obligation debt service requirements, of such unit of government for such fiscal year, then such unit of government may pay such judgments over a period of not more than five years in equal annual installments and shall pay interest on the unpaid balance at the rate provided by law."