OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



August 7, 2000

Ms. Cathy L. Hendricks
Executive Director
Texas Board of Architectural Examiners
333 Guadalupe, Suite 2-350
Austin, Texas 78711-3942

Opinion No. JC-0266

Re: Responsibility for enforcement of the Professional Services Procurement Act (RQ-0204-JC)

Dear Ms. Hendricks:

You have requested our opinion regarding the enforcement of the Professional Services Procurement Act ("PSPA"), subchapter A of chapter 2254, of the Government Code. We conclude that the Comptroller, and to a lesser extent, the State Auditor, have the primary roles in enforcing the PSPA against state agencies. We also determine that the County Auditor has the principal responsibility for enforcing the PSPA against a commissioners court. Finally, we conclude that the Texas Board of Architectural Examiners ("TBAE") is charged with enforcing the PSPA with regard to individual architects.

Section 2254.003 of the Government Code prohibits a "governmental entity," defined by section 2254.002 to include "a state agency or department" as well as "a district, authority, county, municipality, or other political subdivision of the state," from "select[ing] a provider of professional services" or "award[ing] a contract for the services on the basis of competitive bids." TEX. GOV'T CODE ANN. §§ 2254.002(1), .003(a) (Vernon 2000). Section 2254.003 sets forth the requisite standards for making the award of a contract for professional, including architectural, services, and section 2254.004 establishes the mechanism for doing so. *See id.* §§ 2254.003, .004. Section 2254.005 declares that "[a] contract entered into or an arrangement made in violation of this subchapter is void as against public policy." *Id.* § 2254.005. You first ask what entity has the authority to enforce the "no competitive bids" requirement of the PSPA against a "governmental entity." Because you do not limit your inquiry to state-level governmental bodies, we shall consider governmental entities at both the state and local levels. We will first address the matter at the state level.

The Comptroller of Public Accounts is the official charged by statute with approving and paying claims against the state. *See generally id.* § 403.011 (Vernon Supp. 2000). As "the State's sole accounting officer," the Comptroller has the duty "to determine that the fiscal concerns of the State are managed as provided by law. Included is the duty to verify the correctness of all accounts presented for settlement and to require vouchers in support of same." *Norris v. Bullock*, 580 S.W.2d 812, 813 (Tex. 1979). Subsection 403.071(a) of the Government Code provides that "[a] warrant

may not be prepared unless a properly audited claim, verified as to the correctness by the agency submitting the claim, is presented to the warrant clerk." Tex. Gov't Code Ann. § 403.071(a) (Vernon 1998). Section 403.078 requires that "[a]ll claims and accounts against the state . . . be submitted on forms or according to the method and format that the comptroller prescribes. The claims and accounts shall be prepared to provide for entering on the claim or account, for use of the comptroller's office, . . . information required by the comptroller's rules . . . ." *Id.* § 403.078.

Several of the Comptroller's rules address the matter at hand. Section 5.51(c) of volume 34 of the Texas Administrative Code provides that:

> The officers and employees of a state agency are responsible for:
>
> (A) being knowledgeable about Texas laws and rules concerning expenditures;
>
> (B) ensuring that the agency's expenditures comply with those laws and rules;
>
> (C) *determining the agency's legal authority for making each payment that would result from a purchase document before the document is submitted to the comptroller;*
>
> (D) ensuring that for each purchase document, the agency maintains necessary documentation for proving that each payment resulting from the document is legal, proper, and fiscally responsible; and
>
> (E) ensuring that each purchase document complies with the processing requirements of USAS.

34 Tex. Admin. Code § 5.51(c) (2000) (emphasis added). Section 5.51(e) states that "[t]he comptroller may require a state agency to make available to the comptroller documentation to support the legality and fiscal responsibility of each payment that results from a purchase document if the payment is made out of the agency's funds." *Id.* § 5.51(e)(1). Furthermore, "[i]f the agency does not make supporting documentation for a particular purchase document or payment transaction available to the comptroller according to the comptroller's requirements, then the comptroller may reject the document or transaction or deem the payment resulting from the document or transaction to be unsubstantiated or erroneous." *Id.* § 5.51(e)(6). Thus, when an agency submits a claim for payment on a contract that is void under the PSPA, the Comptroller may, by demanding and examining the accompanying supporting documentation, deem it to be "unsubstantiated or erroneous" and reject payment therefor.

In addition to the Comptroller's authority to disapprove a claim that is invalid, the State Auditor has a supporting role in the process. The State Auditor is empowered to conduct various kinds of audits, including compliance audits. *See* TEX. GOV'T CODE ANN. § 321.013(f) (Vernon Supp. 2000). A compliance audit is the means to determine, *inter alia*, "whether the audited entity has obligated, expended, received, and used state funds in accordance with any limitations, restrictions, conditions, or mandatory directives imposed by law on those obligations, expenditures, receipts, or uses." *Id.* § 321.0132(2) (Vernon 1998). The State Auditor is required to "prepare a written report for each audit" and furnish copies of the report to the legislative audit committee, the Governor, the Lieutenant Governor, the Speaker of the House, and "members of the legislature on a committee with oversight responsibility for the entity or program that is the subject of the report." *Id.* § 321.014 (Vernon Supp. 2000). Furthermore, "[i]f in the course of an audit the State Auditor finds evidence of an illegal transaction," he must "immediately report the transaction" to the Governor, the legislative audit committee, and the appropriate legal authority. *Id.* § 321.016(b) (Vernon 1998). Thus, even if a claim for payment under a contract made in violation of the PSPA is approved by the Comptroller, the State Auditor may serve as a second line of defense to correct the error.

At the county level, the County Auditor is the official who performs the claim approval function that is committed to the Comptroller at the state level. The County Auditor is directed by statute to "see to the strict enforcement of the law governing county finances." TEX. LOC. GOV'T CODE ANN. § 112.006 (Vernon 1999). A claim "may not be allowed or paid until it has been examined and approved by the auditor." *Id.* § 113.064. Section 113.065 provides that "[t]he county auditor may not audit or approve a claim unless the claim was incurred as provided by law." *Id.* § 113.065. In *Crider v. Cox*, 960 S.W.2d 703 (Tex. App.–Tyler 1997, pet. denied), the court observed that "[o]ne of the functions of the office of County Auditor is to operate as part of a delicate system of checks and balances to protect county funds." *Id.* at 706. "The legislative scheme of control of county funds requires specific approval of the claim by the Auditor before consideration by the Commissioners Court." *Id.* The County Auditor "must make an independent examination of each claim and approve it before the Commissioners Court may consider it." *Id.* As the court noted in *Smith v. McCoy*, 533 S.W.2d 457 (Tex. Civ. App.–Dallas 1976, writ dism'd), "[t]he language of these statutes is mandatory. They impose on the auditor the responsibility, before approving a claim, to determine whether it strictly complies with the law governing county finances." *Id.* at 459. Thus, since it is the County Auditor's duty to withhold approval of a claim "unless the claim was incurred as provided by law," an auditor may not approve a claim for payment under a contract made in violation of the PSPA. *See* TEX. LOC. GOV'T CODE ANN. § 113.065 (Vernon 1999).

Texas law does not require a municipality to have an officer whose claim approval duties correspond to those of the Comptroller or County Auditor. Chapter 103 of the Local Government Code requires merely that "[a] municipality shall have its records and accounts audited annually and shall have an annual financial statement prepared based on the audit." *Id.* § 103.001(a) (Vernon Supp. 2000).

With regard to school districts, state law is somewhat more detailed. Section 44.001 of the Education Code requires the Commissioner of Education to "establish advisory guidelines relating to the fiscal management of a school district." TEX. EDUC. CODE ANN. § 44.001(a) (Vernon 1996). The board of trustees of each independent school district is required to "have its school district fiscal accounts audited annually at district expense by a certified or public accountant." *Id.* § 44.008(a). Section 44.010 directs that "[t]he budgets, fiscal reports, and audit reports filed with the [TEA] shall be reviewed and analyzed by the staff of the agency *to determine whether all legal requirements have been met . . . ." Id.* § 44.010 (emphasis added). Subsection 44.031(f) of the Education Code exempts architectural services from the competitive bidding requirements of section 44.031. *See id.* § 44.031(f) (Vernon Supp. 2000). A "knowing" violation of subsection 44.031(f) is a Class C misdemeanor. *See id.* § 44.032(d). Furthermore, "[a] court may enjoin performance of a contract made in violation of this subchapter," including section 44.031, and "any interested party," including a prosecutor, may initiate such action. *See id.* § 44.032(f).

There are numerous other kinds of entities that come within the rubric of "governmental entity" for purposes of the PSPA. *See* TEX. GOV'T CODE ANN. § 2254.002(1) (Vernon 2000) (defining governmental entity for purposes of the PSPA). In some instances, the applicable statute may identify a person who serves a function similar to that of the Comptroller at the state level, or to the County Auditor at the county level. In others, the statute will not assign this function. In any event, the large variety of individual entities precludes a general answer to this question with regard to such entities.

We must also, however, consider the responsibility of the Texas Board of Architectural Examiners with regard to the enforcement of the PSPA against individual architects and architectural firms. Subsection 5(d) of article 249a of the Revised Civil Statutes provides, in relevant part, that the TBAE shall:

> adopt rules to prevent a person regulated by the Board from submitting a competitive bid to, or soliciting a competitive bid on behalf of, a governmental entity that is prohibited by Subchapter A, Chapter 2254, Government Code, from making a selection or awarding a contract on the basis of competitive bids . . . .

TEX. REV. CIV. STAT. ANN. art. 249(a), § 5(d) (Vernon Supp. 2000). Thus, the TBAE's own enabling legislation clearly contemplates that it is required to adopt rules to provide for the discipline of its registrants who engage in competitive bidding in violation of the PSPA. Furthermore, the TBAE is:

> *empowered and authorized* to enforce such rules and regulations, the provisions of this Act, and the statutes of this state pertaining to the practice of architecture, by applying to a court of competent jurisdiction in the county of the residence of the defendant or the county where the violation occurred for relief by injunction,

> restraining order, or such other relief as may be available from such court, in order *to enjoin or restrain a person, firm, corporation, partnership, or any other group or combination of persons from the commission of any act which is contrary to or in violation of such rules, regulations, or statutes.* The Board has the right to institute these actions in its own name. The remedy provided by this section shall be in addition to any other remedy provided by law. The Board may be represented by the Attorney General, the District Attorney, or the County Attorney, and by other counsel when necessary.

*Id.* art. 249a, § 5(c) (emphasis added). Under this provision, then, the TBAE may act on its own to enjoin its registrants from entering into any contract in violation of the PSPA. Furthermore, as an adjunct to this direct enforcement authority, the TBAE may impose disciplinary measures, including revocation or suspension of an individual's certificate of registration, reprimand, or assessment of an "administrative penalty" not to exceed $1,000, against any of its registrants because of "a violation of [article 249a] or of a rule of the Board adopted under this Act." *Id.* art. 249a, § 11(b)(1).

In summary, then, the Comptroller, and to a lesser extent, the State Auditor, by their approval and audit of claims, have the primary responsibility for requiring state agencies to abide by the directives of the PSPA. Likewise, the County Auditor, by her approval and audit of claims, has the principal duty for requiring county government to conform to the PSPA. Finally, the TBAE is the proper entity to enforce the provisions of that statute against its individual registrants.

You also ask about the procedure that the TBAE should follow when it receives a report of a violation of the PSPA. In our opinion, the TBAE's primary responsibility is to ensure that it complies with article 249a, and the rules it adopts pursuant to section 5(d) thereof, by investigating the matter and, if necessary, taking the appropriate judicial and disciplinary action. The TBAE may, of course, wish to notify the Comptroller, when the report involves a state agency, and the particular County Auditor, when it relates to a county, that the TBAE has received the information.

Finally, you ask whether any specific statute establishes penalties for violation of the PSPA. Except for the Class C misdemeanor noted above with regard to school districts, and the permissive "administrative penalty" that may be imposed by the TBAE, the short answer to your question is "no." Section 39.02 of the Penal Code provides that "[a] public servant commits an offense" if "he intentionally or knowingly . . . violates a law relating to the public servant's office or employment," TEX. PEN. CODE ANN. § 39.02(a)(1) (Vernon 1994). The definition of a law that relates to a public servant's office or employment includes "a law . . . that directly or indirectly . . . governs the conduct of the public servant." *Id.* § 39.01(1). Section 2254.003 of the Government Code, which prohibits competitive bidding for architectural contracts, is probably such a law. However, section 39.02 requires an "intent to obtain a benefit or [an] intent to harm or defraud another." *See id.* § 39.02(a). A mere oversight on the part of a purchasing agent is unlikely to be sufficient to support a conviction under such a standard. An offense under section 39.02(a)(1) is a Class A misdemeanor. *See id.* § 39.02(b). As we have previously observed, the primary means of enforcing the PSPA against a

governmental entity is through the Comptroller or the County Auditor, as appropriate, to reject a claim submitted under a contract made in violation of the PSPA.

## SUMMARY

The Comptroller, and to a lesser extent, the State Auditor, by their approval and audit of claims, have the primary responsibility for requiring state agencies to abide by the directives of the Professional Services Procurement Act, subchapter A of chapter 2254 of the Government Code. The County Auditor, by her approval and audit of claims, has the principal duty for requiring county government to conform to the Professional Services Procurement Act. The Texas Board of Architectural Examiners is the proper entity to enforce the provisions of that statute against its individual registrants.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General - Opinion Committee